[Cite as *State v. Moore*, 2013-Ohio-2924.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120770<br>TRIAL NO. B-1205835 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| HAROLD MOORE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  July 5, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Fox & Scott, PLLC*, and *Bradley Fox*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1} Harold Moore was convicted of two counts of receiving stolen property: one count for a stolen SUV, and the other count for a license plate that had been placed on the stolen vehicle. In this appeal, he argues that he was denied the effective assistance of counsel, that his convictions were not supported by sufficient evidence and were against the weight of the evidence, and that the trial court abused its discretion in sentencing him to the maximum allowable prison term. We are not persuaded, so we affirm the judgment of the trial court.

I.

{¶2} On the morning of Friday, August 24, 2012, Lawrence Kemper walked outside to discover that the license plate on his car had mysteriously disappeared, a circumstance he subsequently reported to the police. That same day, a 2001 Chevy Suburban went missing from Advanced Auto Sales, a used car lot in Cheviot, Ohio.

{¶3} After discovering the vehicle missing, Cindy Devers, one of the owners of the car lot, reviewed a video recorded by the lot's surveillance cameras the night before. She could see a person putting a license plate on the SUV, entering the SUV, and driving off in the SUV, but was unable to make out the person's face or features. Ms. Devers showed the video to police officers, who also were unable to make out any identifiable features of the thief.

{¶4} That night, Cincinnati Police Officer Tom DeFranco was patrolling the Over-the-Rhine area of Cincinnati in a marked police car. He ran the license plate of a black Suburban and learned that the license plate had been reported stolen. Before he could pull the Suburban over, two individuals got out and started walking. Officer DeFranco caught up with the driver, whom he subsequently identified as Mr. Moore.

2

He entered the Suburban's vehicle identification number into his computer and determined that the SUV also had been reported stolen by the car lot. When the police officer asked Mr. Moore for the keys to the vehicle, Mr. Moore stated that he had given them to his cousin, whom he refused to name. Officer DeFranco arrested Mr. Moore and arranged for the Suburban to be towed.

{¶5} The following Monday, Ms. Devers was told that the vehicle had been located. When the SUV was retrieved from an impound lot, the steering column had been stripped. At trial, Ms. Devers identified Mr. Moore as a person who had come to the car lot at least twice asking about the Suburban one or two weeks before she discovered the vehicle missing. She remembered Mr. Moore because he had several distinctive tattoos. After she learned that Cincinnati police had made an arrest in the case, she viewed Mr. Moore's photograph on the Hamilton County Clerk of Courts' website. She recognized Mr. Moore as the person who had visited the lot and inquired about the Suburban.

{¶6} Mr. Moore took the stand in his own defense. He denied that he had known that the SUV and license plate had been stolen, claiming that had he known, he would have sped away from the police officers on the night that he was stopped.

{¶7} At the conclusion of the bench trial, the court found Mr. Moore guilty as charged and sentenced him to 18 months for one count and 12 months for the other. The sentences were made concurrent with each other.

II.

{¶8} In his first assignment of error, Mr. Moore asserts that he was denied the effective assistance of counsel. To succeed on this assignment, he must demonstrate that his counsel's performance was deficient, and that, absent his counsel's errors, the result of the proceedings would have been different. *Strickland*

3

*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶9}     Mr. Moore first contends that his counsel was ineffective because he did not move for a mistrial based on the destruction of exculpatory evidence.  Prior to trial, Mr. Moore's counsel inquired about the existence of the surveillance video from the car lot.  As explained by Ms. Devers during her testimony, the video was automatically taped over every 30 days.  Thus, no video was available to provide to Mr. Moore as part of discovery.  Mr. Moore claims that his counsel should have moved for a mistrial because the video was potentially exculpatory.

{¶10}     The failure to provide Mr. Moore with the surveillance video would have violated his due process rights if the video was material to his guilt.  *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph four of the syllabus. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at paragraph five of the syllabus.  Here, we are unable to conclude that the video was material to the issue of Mr. Moore's guilt.  Ms. Devers testified that she had been unable to discern any features of the person seen on the videotape, and that the police officers who reviewed the tape had not retained it as evidence because they had been unable to make anything out.

{¶11}     Even if the video was not materially exculpatory but only potentially useful to Mr. Moore, a due process violation could have been shown if the state acted in bad faith in failing to preserve the video. *State v. Geeslin*, 116 Ohio St.3d 252, 878 N.E.2d 1 (2007), syllabus.  Here, however, the record does not demonstrate bad faith on the part of the state.  Rather, the police officers did not preserve the video because

4

they determined that it had no evidentiary value. We conclude that counsel was not ineffective for failing to pursue a motion to dismiss.

{¶12}   Mr. Moore next contends that counsel was ineffective because he did not move for a Crim.R. 29 acquittal at the close of the state's case. We disagree. Even if counsel had made a Crim.R. 29 motion, it would have been denied by the court, which found sufficient evidence to convict Mr. Moore of both counts in the indictment. We therefore overrule the first assignment of error.

{¶13}   We consider Mr. Moore's second and third assignments of error together. In the second, he asserts that his convictions were not based on sufficient evidence. In the third, he claims that his convictions were against the manifest weight of the evidence. Neither assignment of error is well taken.

{¶14}   As to the sufficiency argument, our review of the record reveals that the state adduced substantial, credible evidence from which the trial court could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of the offenses for which Mr. Moore was found guilty. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; R.C. 2913.51.

{¶15}   In regard to the manifest-weight argument, our review of the entire record fails to persuade us that the trial court clearly lost its way and created such a manifest miscarriage of justice that we must reverse Mr. Moore's convictions and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997). The second and third assignments of error are overruled.

{¶16}   In his final assignment of error, Mr. Moore asserts that the trial court abused its discretion when it sentenced him to the maximum allowable term for each count. He argues that the trial court did not place on the record its consideration

and weighing of the statutory factors before sentencing him. *See* R.C. 2929.11 and 2929.12. But we may presume that the court considered the proper sentencing factors. *State v. Love*, 194 Ohio App.3d 16, 2011-Ohio-2224, 954 N.E.2d 202, ¶ 14 (1st Dist.), citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, fn. 4. Further, having reviewed the record, we are unable to conclude that the court abused its discretion when it imposed the maximum sentence for each count. *See Kalish*, *supra.* The final assignment of error is overruled. We therefore affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.